# SWORN AFFIDAVIT STATEMENT

On 8/10/2024 OFFICER JOHN WALKER SLAMMED ME in THE A-Pod Sallyport WHILE I WAS on MY KNEES FACING THE WALL WITH MY HANDS in THE AIR. HIS FORCE WAS EXCESSIVE and COMPLETELY UNNECESSARY. THIS WAS also WITNESSED by SEVERAL inmates including PATRICK RYAN SMITH in WHOM I KNOWINGLY and INTELLIGENTLY REQUESTED TO PREPAIR THIS AFFIDAVIT FOR ME. THIS IS a TRUE and CORRECT STATEMENT MADE in GOOD FAITH.

RESPECTFULLY

WITNESS Patrick Smith
PATRICK Ryan Smith     AFFIANT Joshua Gann
181239C   11-29-1984              JOSHUA D GANN
                        JACKET 19163
                          S-17-78  1978

SWORN AFFIDAVIT STATEMENT                    9/7/2024

On or Around ___9-3-2024___ OFFICER JOHN
Walker Slammed me after an altercation
in E-pod at THE SEVIER Co. ANNEX. THE alter-
cation was already over and He Slammed me
WITH EXCESSIVE FORCE "AFTER THE FACT". His actions
were UNNECESSARY.
         I PERSONALLY REQUESTED P. Ryan Smith (M.S.)
to PREPAIR THIS AFFIDAVIT FOR ME KNOWINGLY and
INTELLIGENTLY after learning He, Himself was
also a victim of OFFICER JoHN Walker. I was also
in E-pod WHEN Walker STARTED THE RumoR about
M.R. Smith. THIS AFFIDAVIT is a TRUE and CORRECT
STATEMENT made by me _____
in Good Faith.

              RESPECTFULLY,

Witness: P. Ryan Smith AFFIANT    Kurt Jagers #180380
(M.S.)                            P.O Box 791
     9/7/2024                     pigeon forge 37862 TN
  #181239

P. Brant Smith 181239                                    P. #1

Given to Lt Tarwater on 8-9-2024
I was advised by my Attorney and the A.C.L.U.
of TN. To Write this Grievance.

There have now been (3) ocassions that I
have filed legitimate Grievances and received
Vindictive and Spiteful Repriccutions that
all lead to deliberate indifferences. I have
had no choice but to have to endure the following:

1. 6-7-2024 · I Filed and Requested to Split My
Medication up into (2) doses. 1.8mg dose at
6 A.M. & 1.8mg. at 6 p.m. (which also is the
Normal times if not incarcerated.) I currently
have no choice but to take 2.8mg. tablet's
"one-time" a day at 6p.m.
6-8-2024 · I was woke up out of my sleep
at 6A.M. by officer Bo & H.S.A. nurse "Lann".
H.S.A. Lann Stated; "Patrick, I'm so sick and
Fucking Tired of you Filing These Goddamn
Grievances."; "You have got to fucking stop."
"you keep citing this fake law."; "Did you know
There's a law that says we don't have to
treat you at all, it's called "our law".
; "I've already spoke to our Attorney and
the Doctor both". ; "They have agreed to take you
off your Suboxone".
All of this was said to me by the

H.S.A. Nurse Lynn around 6 A.M. on a Saturday Morning, inFront of Officer Bo, after having him come wake me up and confront me". She Provoked me, disrespected me, threatened to take my medication and was "Deliberately Indifferent" towards me, all because I Filed a grievance.

The Reason I Filed the grievance to begin with is because There were some days I Wouldnt get my meds untill 11 P.M. at nite which is unreasonable

2. 6-28-2024 - I wrote a grievance because I've now gone (4) months without any Mental Health Treatment. And For whatever Reason, on 6-26-2024, the Nurse Practitioner, (NP) Patrick McCormick, decided to have Nurse Gayla Williams give me a medication called "Celexa". No one informed me that it would make me sick and that it had a high number of side affects. IF they would have, I never would have taken the medication period.

After about (2) hours afterinjesting the "Celexa", I couldnt even get out of the bed. It made me very sick. I became very nauseated it gave me

a GRIEVANCE. SHE TOLD SGT. Victoria THAT I WAS "PSYCOTIC" and THAT I NEEDED TO BE MOVED TO "MEDICAL FOR "OBSERVATION". SHE said THAT THE ORDER CAME FROM DOCTOR BATES. IT WAS NURSE Lynn THAT PUSHED THE ISSUE TO MAKE ME MOVE. SHE deliberately Had ME MOVED because I FiLed THE GRIEVANCE. IF H.S.A. Lynn Had any CONCERN FOR MY HEALTH at all, SHE WOULD HAVE Had ME MOVED TO "OBSERVATION" THE day NURSE Williams Made a REPORT about My REACTION and discontinued THE CELEXA. WHEN Lynn Had ME MOVED like THAT, SHE WAS deliberately INdiFFERENT TOWARDS ME.

3. ON 7-10-2024- AFTER RECEiViNG My MEDICATION 5-6 HRS. later THAN USUAL ON 5-29-2024, at 10p.m, 6-7-2024, at 10p.m. 7-1-2024, at 10:30 p.m., 7-5-2024, at 10:30 p.m. 7-10-2024, at 11p.m. 7-11-2024, at 11p.m. All OF THESE OCCURANCES Fall ON OFFICER PIERCE and NURSE ANGIE'S SHIFT. I FiLed a GRIEVANCE ON OFFICER PIERCE and NURSE ANGiE AFTER 7-10-2024 late Meds IRonically, ON 7-11-2024, which WAS also a 11p.m. MEd call, Unbeknown TO ME, I WAS alegidly "Flagged" by NURSE ANGiE FOR

supposidly "Hoarding" My Meds. Then, Ironically one Week later, again, I Was alegidly Flagged by Nurse "Angie" For Supposidly "Hoarding" My Meds. 7-11-2024 & 7-19-2024 Were the dates "Angie" Flagged me. Nurse Williams called me to Medical on 7-20-2024 at 9:41 A.M To Tell me This. It Was The First I Heard anything about it.

Nurse Williams Told me That it Had Been Recorded For The 2nd Time That I Had Alegidly "Hoarded" My Subotone & That I Was being Taken off. This is another Deliberate indifference. At This point I believe im being Targeted because of a Pending lawsuit I've Filed on The Sherriff and Q.C.H.C.

To make Matters Even More Confusing I Was Cleared by Medical After being Checked Thouroughly With a FlashLight and Pulling out My Lips and lifting My Toungue and Swishing Water. There Has NEVER Been a Time I Haven'T Been Cleared To Go back.

REQUESTED RESOLUTION: INVESTIGATE THIS and document it. "Flag" Nurse Angie & Pierce "Per State Standards".

Claim Land Blix                    P#1

1ST AM. 'Protected conduct includes a prisoner's undisputed First Ammendment right to file grievances against prison officials on his own behalf.' Hill, 630 F.3d at 472 (Quoting HERRON V. HARRISON, 203 F.3d 410, 415 (6th Cir. 2000). This right is protected, however, only if the grievances are not frivolous." HERRON, 203 F.3d at 415.

Retaliation Claim H.S.A Land Blix in her Official Capacity

Retaliation based upon a prisoners exercise of his/her constitutional rights violates the constitution. See Thaddeus-X V. Blatter, 175 F.3d 378, 394 (6th Cir. 1999)

Plaintiff's usual medication time is 6 P.M. On the dates below are a slew of late medications times:

1. 5-29   10 P.M.        5. 7-10   11 P.M.
2. 6-7    10 P.M.        6. 7-11   11 P.M.
3. 7-1    8 P.M.
4. 7-5    10:30 P.M.

To make the court aware, I also currently have an inadequate medical care claim pending in this same court. However, the claims is instant action

PERTAIN TO "Retaliation" Claims UNDER THE 1ST AMM. I BELIEVE THAT BECAUSE im a "PRE-TRIAL-DETAINEE" THIS INSTANT action is BROUGHT PURSUANT TO THE DUE PROCESS CLAUSE OF THE 14TH AMM. And THE "Conditions of Confinement" COME Im THE 8TH AMM. OF THE U.S. CONSTITUTION.

FOR PURPOSES OF TIME And Judicial EFFICENCY, THE Plaintiff WOULD like TO Rely on His → (5 PG.) HAND WRITTEN GRIEVANCE TO LT. "TARGWATER" FOR H.S.A. LYNN Blix Retaliation Claim. AT THIS TIME, I WOULD like REQUEST THE COURT TO SUBPOENA OFFICER "Bo"'s bodycam and OR Video FOOTAGE OF H.S.A. LYNN "GRilling" ME in THE E-Pod Sally-PORT INFRONT OF OFFICER Bo. I also WOULD like TO REQUEST THE COURT TO SUBPOENA My GRIEVANCES FROM THE SEVIER CO. SHERIFF DEPT. THEN REFUSE TO GIVE ME COPIES. Also, ANOTHER FORM of Retaliation FROM H.S.A. LYNN WAS on 5-13-2024 AFTER SENDING Plaintiff MULTIPLE disRESPECTFUL And UNPROFESSIONAL RESPONSES TO His Medical INQUIRIES SHE deliBERATELY and intentionally "Hiked" His Medical balance up $.30

Retaliation Claim Continued - H.S.A. Lynn Blix  P#3
no 1:20-CV-235-TRM-CHS (E.D TENN. Aug 27 2020)
"Class of one Theory" P.4-5 discrimination/Equal Prot.
• THE EQUAL PROTECTION ~~Clause~~ Clause Commands that
NO STATE SHALL "deny TO any PERSON WITHIN IT'S
JURISDICTION THE EQUAL PROTECTION OF THE laws.",
U.S. CONST. AMM. XIV & 1

Individuals who do not belong to a Suspect
Class or allege interference with a fundamental
Right can assert an Equal Protection Claim by
alleging that a GOVERNMENT PRACTICE THAT HAS
No Rational basis discriminates against THEM
under a "Class of one" THEORY, a RIGHT TO BE
TREATED EQUALLY. Unlike THE TREATMENT THE
Plaintiff HAS DEMONSTRATED Multiple TIME'S in
His Complaint. THE behavior and ACTIONS OF
THE DEFENDANTS in THIS instant action,
do Not Fall anywhere within THE CONSTI-
TUTIONAL Standards OF THE UNITED STATES.

EXTREME DEPRIVATIONS - Hudson V McMillian,
503 U.S. 1, 8-9 (1992) (Providing THAT Only "EXTREME
DEPRIVATIONS" THAT deny a PRISONER "THE Minimal
CIVILIZED MEASURE OF LIFE'S NECESSITIES" Will
ESTABLISH THAT A PRISONER'S Conditions of CONFINEMENT
Violate THE 8th Amm.

Plaintiff's Complaint Clearly Alleges THAT, on
Several occasions, He Was Punished For Filing
GRIEVANCES and that the 1st AMM does Not Permit

EVEN MiNor PUNIshMENT To be METED oUT iN
RESPONSE TO dN iNMATES EXERCISE oF 1ST AMM.
RiGHTS. Plaintiff Was "RE-Housed" For Filing a lEGiTiMATE
GRiEVANCE about His Medication iN RETaliation FRom
H.S.A. Lunn. THE CoNducT THE Plaintiff ENGAGED iN
WHicH TED To THiS PUNishMENT Was NOT disRESPECTFul
oR THREATNING aNd is PROTECTED by THE 1ST AMM.

ARE THESE THREATS, VERbal REPRiMANds, RuMoRS,
DElayed MED. TIMES, FiRE alaRMS, SiRENS, FlaSHiNG liGHTS,
No MENTal HEalTH CARE, bEiNG RE-Housed, Mail iSSUES,
aNd EVERyTHiNG ELSE CoMbiNED lEGal oR CoNsTiTuTioNal?
CollECTiVELY, THERE is No way. CoMbiNED, THiS iS
a ModeRN day 8TH AMM CRuEl aNd UNuSual
PUNishMENT VidaTioN. THaddEus-X, 175 F.3d aT 394 -
CoMplaiNT STATES a Valid RETalion Claim uNdER
THaddEus-X V. BlaTTER.

IN GENERal GOVERNMENT officials May Not
RETaliATE aGaiNST PERSONS WHo HavE PaRTiCiPaTED iN
CoNsTiTuTioNally PROTECTED CoNduCT. Mt. HEalTHy
CiTy SCH. DiST. bd oF Educ. V DoylE, 429 U.S. 274,
286-87 (1977). All oF THE DEFENdaNTS iN THiS
iNsTaNT acTioN acTED iN a Way THaT aMMoUNTED
To aN "EGREGioUS abUSE oF GOVERNMENTal
PoweR".

# OFFICER Walker Failure to Protect Claim    P#1

A Failure to Protect Claim for a Pre-Trial Detainee arises under the Due Process Clause of the 14th Amm. (Westmoreland v. Butler County 29 F.4th 721, 727, (6th Cir. 2022)

On 8-5-2024, Plaintiff was taken to court with several inmates from E-Pod. "OFFICER Walkers" "Aryan" Privilege Pod. You have to be "White" and you have to be a "local" to go to E-Pod. Some exceptions are made if one is Affiliated.

In light of these facts:

1. Plaintiff is not allowed to go back to E-Pod because of OFFICER Walker starting a rumor that he was a "Snitch."

2. According to CPL Mason, a Shift Supervisor and Gang Coordinator, the Plaintiff and OFFICER Walker are not allowed around each other because of the "Rumor". Per CPL. Mason.

In light of these facts, ZERo measures to Guarantee the Safety of the inmate/Plaintiff were Taken. Farmer v. Brennan 511 U.S. 825, 832, (1994) Quoting Hudson V. Palmer 468 U.S. 517, 526-27 (1984)

Walker was the E-pod officer on the 5th, he personally brought inmates from E-pod and escorted them into the courtroom.

Also, on 8-28-2024, OFFICER Walker Strip Searched Plaintiff after allegedly being told he was not

Officer Walker Failure to Protect Claim          P#2

allowed to be around the Plaintiff, because of
the rumor he started. Officer Walkers actions
fall way outside of the Current "Social-
Norm's" of Correctional officers. Luckily, for
the Plaintiff, he was not attacked in the
Court Room by e-pod inmates when he
was confronted and told that "it wouldn't
be good if he came back." On this day in
Question, 8-5-2024, the day of court, there
were (0) "Zero" Measures taken to protect
the Plaintiff from e-pod inmates or officer
Walker period. Because of officer Walkers Sadistic
and Malicious actions, careless and reckless
disregard, the Plaintiff now has to Worry,
Suffer Mental & Emotional Anguish and
Constantly look over his shoulder in fear of being
attacked and becoming a victim of Some
form of Sadistic and Malicious Retaliation.
        Being labeled a Snitch in the Prison Environ-
ment can indeed pose a threat to an inmates
health and safety in violation of the 8th Amm.
See United States v. Henderson, 565 F.2d 900,
905, (5th Cir. 1978) (The life of a "Snitch" in a Pen-
itentiary is not very healthy). See also Comstock
v. McCrary, 273 F.3d 693, 699 n.2 (6th Cir. 2001).
Noting that Prisoner labeled a Snitch could become a
target for other Prisoner's attacks; Berkovitz v. Mazzis 102 F.3d
1564, 1567-68 (10th Cir. 1998).

OFFICER JOHN WALKER in His OFFICIAL CAPACITY P. 1
14th AMM.

## -EQUAL PROTECTION Claim-

THE HEART OF an EQUAL PROTECTION Claim is THAT
Similarly Situated inmates WERE TREATED differently
and THAT THIS DIFFERENCE in TREATMENT bore No
Rational RelationSHIP To any legitimate PENAL interest
WEILER V. PURKETT, 137 F.3d 1047, 1051 (8th Cir. 1998)

1. No OTHER inmates lives, SAFETY of HEALTH Was deliberately
put in danger by THE Rumor Spread by Walker

2. No OTHER inmates Had a Rumor Spread about THEM.

3. No OTHER inmates WERE Told THEY Had To STAY away
from Walker.

4. No OTHER inmate WAS FORCED To STAY in A-Pod, a
Medical Pod b/c of a Rumor Spread/STARTED about THEM
by a CORRECTIONS officer.

5. No OTHER inmate's FUTURE life WERE put in JEAPRODY
and REMAIN in JEAPRODY because of a Rumor THAT
Was STARTED about THEM by a CORRECTIONS officer.

A plaintiff can rely on CircumStantial EVIDENCE
To PROVE "SUBJECTIVE Knowledge". See HOPE V. PELZER
536, U.S. 730 (2002). (One May infer THE EXISTENCE
of THIS SUBJECTIVE STATE of Mind FROM THE FACT
THAT THE RISK of HARM is obvious.); FARMER 511 U.S.
at 842.

Walker's intentions WERE in bad Faith and To
EnCOURAGE THE RESULT of Vidence, Maliciously and
Sadistically To Cause HARM To THE Plaintiff. THE MALICIOUS

and Sadistic Requirement applies Regardless of
whether the Corrections officer are Quelling a
disturbance or Merely Trying to Maintain order.
Moreover, the standard applies Regardless of whether
an "Unnecessary and Wanton infliction of Pain
has occurred. Id at 112 S.Ct. at 998, 999 (Quoting
Whitley V. Albers, 475 U.S. at 319, 106 S.Ct. at 1084)

   Plaintiff does not believe it is Right & Fair to have
to wait until he is actually a Victim of "Physical
Violence" before the Courts intervene. After Previously
being fired for his misconduct, then being Re-hired
by the Sheriffs office, it seems as if officer
Walker took his second opportunity as an
express invitation to come back and Continue
where he left off, Committing more Crimes and
Civil Rights Violations. The Courts are no doubt aware
of the Continuos Civil Rights Violations by Jails
accross the Nation and turn a blind eye.

   Officer Walker's actions have no Rational basis
and Such disparate Treatment burdened the Plaintiff's
8th & 14th Amm. Right to be Free from Cruel & Unusual
punnishment.

John Walker in His Official P.#1
Capacity, "Retaliation

On or around 7-27-2024 Plaintiff
was moved from E-pod to A-pod
at the Sevier Co. Annex. During
P.M. Med call CPL Mason advised
Plaintiff that he was being "Re-
housed" along with 2 other in-
mates.
On or around 8-1-2024, CPL.
Mason informed Plaintiff that officer
John Walker started a rumor in E-
pod that Plaintiff was a Snitch.
On or around July 31st and
August 1st Plaintiff spoke with CPL.
Mason during P.M. Med Call for
20 mins and again Briefly on Masons
Midnite walkthrough in A-pod.
During the Med call Conver-
sation, Mason informed the Plaintiff
of John Walkers Prior History of
Misconduct and that officer Walker
Had infact been fired and Re-hired
by the Sheriffs Dept.

T.C.A. 41-1-116 States;
Qualifications of Corrections off-
icers. 41-1-116 (b) specifically States
Corrections officers should have
Good Moral Character as determined
by investigation. This seems to have

BEEN Violated upon the "REHIRE" of OFFICER Walker AFTER THE FACT OF HIS PRIOR MISCONDUCT and discipline.

No legitimate Penological purpose could HAVE BEEN SERVED by defendant WALKERS Conduct and His actions towards THE Plaintiff demonstrated a STATE OF Mind THAT was not MERELY deliberately INdiFFERENT but, also Sadistic and Malicious. NORTHINGTON V. MARTIN 102 F.3d 1564, 1567-68, 10th Cir. Deputy acted with "OBDURATE and Wanton" disRegard FOR Plaintiff Safety by spreading a Rumor in the Jail that the inmate was a Snitch. "OBDURACY OR WANTONNESS" Not "inadVERTENCE OR Good Faith ERROR" CHARACTERIZES delib. Indiff." GIBSON V FOLTZ, 963 F.2d 851, 853 (6th Cir. 1992)

THE 8th Amm., WHICH applies to the STATES THROUGH THE DUE PROCESS clause OF THE 14th Amm., Prohibits the infliction of "CRUEL and UNUSUAL PUNISHMENTS. IN ESTELLE V. GAMBLE, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) THE SUPREME COURT acknowledged THAT THE 8th Amm. Could be applied TO Conditions of CONFINEMENT.

IN light of defendant WALKER'S Training and EXPERIENCE as a CORR. OFF. AT THE TIME He decided TO START THE RUMOR, HE WITHOUT a doubt, was COMPLETELY AWARE OF

THE EXCESSIVE RISK TO THE PLAINTIFF HEALTH, SAFETY and WELL-BEING. HE ACTED DELIBERATELY and RECKLESSLY DISREGARDED PLAINTIFFS CONSTITUTIONAL RIGHTS AS AN INMATE. ALSO, CONSIDERING DEFENDANT WALKERS REPUTATION and HISTORY of PRIOR MISCONDUCT, AS STATED by CPL MASON, IT SEEMS AS IF THE DEFENDANT THINKS HE IS ABOVE THE LAW.

ON 4-20-2024, DEFENDANT WALKER ALONG WITH OFFICER GREEN, CPL. MONDAY, SGT. VICTORIA "SHOOK down" E-POD. AFTER THE SHAKEDOWN WAS OVER and ALL OF THE OFFICERS HAD EXITED THE DORM, THE door WAS SHUT and LOCKED. FOR WHATEVER REASON, INMATE H.F. or "HARLEY FLOYD" THREW an EMPTY CUP AT THE door. IMMEDIATELY, DEFENDANT WALKER OPENED UP THE DOOR and OPENED FIRE ON THE ENTIRE INMATE POPULATION HITTING MR. Floyd 12-15 TIMES WITH a HIGH-POWERED A-R STYLE PEPPER/GAS ball RIFLE. MULTIPLE INMATES WERE HIT, TOXIC GAS WAS RELEASED INTO THE AIR EFFECTING THE ENTIRE INMATE POPULAT-ION CAUSING US ALL TO COUGH and CHOKE ON THE GAS. DEFENDANT WALKERS ACTIONS WERE EXCESSIVE and AFF-ECTED THE ENTIRE INMATE POPULATION. PLAIN-TIFF WAS RUSHED OUT by OFFICERS PER SGT.

because of his Asthma. He was given a breathing treatment and taken back to E-Pod.

Plaintiff assisted Harlen Flood in prepairing a 1983 claim for excessive force against defendant Walker. Since the shooting incident, Walker found out that Plaintiff assisted Mr. Flood with his complaint against him and has since developed a vindetta against ~~the~~ the Plaintiff. Walker has made slick comments to the Plaintiff calling him a "paper pusher", which is a slick term for snitch. He's walked by Plaintiffs bunk and made comments about how much paperwork Plaintiff has accumulated from his filings and multiple cases. These comments shouldn't be taken lightly by the court. They are all attempts by Walker to paint a bigger picture in the minds of lesser educated inmates in hopes to manipulate them and turn them against the Plaintiff and make them "suspicious" of him. Its a sadistic form of manipulation.

The Plaintiff believes that after he was moved, Walker seen a perfect opportunity to start ~~another story~~ another story about him, to keep him from coming back to E-Pod. Plaintiff believes that Walker seen him as a "threat" that could potentially expose his misconduct.

According to Cpl. Mason, Walker has a lengthy history of prior misconduct. Mason aleged that Walker had "done this a time or two" and that he never

SEEMS TO HAVE HIS body camera on. MASON also said that
WALKER KNOWS "HOW and WHEN" TO TURN HIS CAMERA
OFF TO "avoid being CAUGHT," TAMpering with the
EVIDENCE IN THE PROCESS. 39-16-503(b) T.C.A. -
A Violation of THIS SECTION is a class C Felony.

IT'S REASONABLE TO Say THAT if WALKER WAS
RE-HIRED AFTER PRIOR MISconduct, obviously HE WAS
AWARE THAT HE WAS being Closely WATCHED THROUGH
HIS body CAM, FOR ANY FUTURE MISConduct. IF THIS
IS TRUE, WALKER NOT HAVING HIS body CAMERA on
WHEN HE STARTED THE RUMOR, WAS a "deliberate -
IMPAIRMENT" TO "ALTER" WHAT WOULD HAVE been
ADMISSIBLE EVIDENCE, WHICH SEEMS TO Violate
39-16-503 (a)(1)(2)

Also, T.C.A 41-4-140(a)(5) STATES OFFICERS HAVE a
duty TO ENSURE THE WELFARE OF all PERSONS Committed
TO THE INSTITUTIONS. Deliberately STARTING a RUMOR
THAT an INMATE is a SNITCH SEEMS TO CONTRADICT THIS.
41-4-118 EMPloyment of Guard - Duty OF THE SHERIFF
TO EMPloy a SUFFICIENT GUARD TO PROTECT THE, defendant
From Violence. NOT TO INFLICT HARM OR CREATE a
dangerous ENVIRONMENT.

IN light OF WALKER being FIRED PREViously FOR
MISconduct, THEN being RE-HIRED again TO Commit MORE
INCIDENTS OF MISconduct, is QUESTIONABLE. And SHOULD
BE INVESTIGATED by THE COURT.

THERE is no doubt THAT OFFICER WALKER WAS

completely aware of what he was doing at the time he
took it upon Himself to start the Rumor, Conciously
and Recklessly disregarding Plaintiffs Constitutional
Rights, which is the equivilent of Criminal Recklessness,
creating imminent fear in the Plaintiff, Unnecessarily
and Wantonly inflicting Mental and Emotional
pain and Suffering. A Mental Health patient who has
Gone untreated Since His incarceration and also
been forced to endure many other Constitutional
Violations as well. For Example; 1. Onerous fire alarms,
lights strobbing and Sirens blaring in the Early
A.M. Hours:

1. 6-16-2024   12:00 A.M.
2. 6-17-2024   4:15 P.M.
3. 7-5-2024   12:31 A.M.
4. 7-18-2024   2:15 A.M.
5. 7-20-2024   3:48 A.M.
6. 7-22-2024   4:07 A.M.
7. 7-24-2024   6:42 A.M.
8. 7-27-2024   1:38 A.M.

} E-Pod

9. 8-2-2024   4:41 A.M. } A-Pod
10. 8-9-2024   3:41 P.M.

Also, late Medication Time's Close to Midnite, in-
stead of the Regular 6P.M. Time. For Example late times:
1. 5-29-2024 -10:P.M.    4. 7-5-2024  10:30P.M.
2. 6-7-2024 - 10:P.M.    5. 7-10-2024  11P.M.
3. 7-1-2024   8P.M.      6. 7-11-2024

MED TIMES GOT later and later then, when I decided to File a legitimate GRIEVANCE I reaped more Vindictive REPERCUSSIONS and was lied on and "Flagged" by Q.C.H.C. Nurse ANGIE. (SEE copy of GRIEVANCE TO Lt. TATWATER.)

OTHER Civil RIGHTS Violations Plaintiff Has Endured include:

1. (2) cameras in THE bathroom above THE SHOWER, TOILETS and URNAIS THAT can WATCH INMATES TAKE SHOWERS and USE THE BATHROOM. A-Pod

2. A SPEAKER in THE ATTORNEY booth THAT can listen to private attorney conversations. SEEMING TO Violate THE Attorney/client Privilege and THE Right TO Private CONVERSATION.

3. BEING denied THE opportunity To File a police REPORT when My HOME was BURGLARIZED. Plaintiff Made Multiple requests To make a police Report To CPL Mobley, SGT. JOSE and victoria SGT.

4. Not being allowed To participate in any Type of Religious SERVICES FOR MONTHS, NOT EVEN on EASTER.

5. Being charged $2.00 FOR a Roll of TISSUE.

6. No MENTAL HEALTH CARE - (Pending Screening)

7. No ACCESS To CERTIFIED Mail Slips OR any Type of indigent assistance FOR POSTAGE FOR legal Mail. THE Jail will only Give you "STAMPED- ENVELOPES". No way To double up OR add POSTAGE FOR legal Filing's THAT Require a "Manilla" ENVELOPE.

8. Poisonous "HAMMER-HEAD" WORM invasion in THE

shower in A-Pod.

9. Had a worm in my food on 8-29-2024 in my green beans. Witnessed by pod officer.

10. Endured multiple threats by H.S.A. Lynn to "take me off my meds" for filing grievances.

11. Been charged for using my asthma inhaler "out side of med call" multiple times.

12. Forced to use "community" nail clippers in a medical dorm with inmates that have H.I.V. and Hepatitis C without being given any kind of cleaner.

13. Forced to use "community" hair clippers, same clippers for the entire jail without cleaner.

14. Received legal mail that was months late, some of the pieces were "hand delivered".

15. Held in an institution where the administrative remedy system is frequently unavailable.

16. Officials at the Sevier Co. Sheriff Dept. / Jail "Do-Not" wear nametags and will not ever tell you their name if you ask respectfully.

# Facts Sheet:

- Officer Walker has previously made comments to inmates that Plaintiff's lawsuits and grievances were causing "shakedowns" and keeping inmates from getting "outside rec time".

- Plaintiff assisted Harley Floyd in preparing a 1983 action against John Walker for excessive force which was made known to Walker by Harley Floyd.

- John Walkers rumor has caused Plaintiff to live in constant fear of being injured or possibly even loosing his life or a family member. Causing him to suffer great mental anguish and emotional stress.

- Walkers rumor has made Plaintiff's constitutional issues more complex - further exacerbating his current untreated mental health diagnosis such as A.D.H.D., Bi-polar, P.T.S.D., Low-T, O.C.D.

- Prison officials have labeled Plaintiff a snitch and are deliberately & intentionally exposing him to inmate retaliation. Perhaps because of his conduct in bringing prior lawsuits and filing multiple grievances against the jail and its officials.

- Rumor further endangered Plaintiff's life by engendering more hostility to him among inmates.

- Actions done in retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate - Followed by a chronology of events or multiple violations.

Facts Sheet Continued: P#2                                    P#2

- ACCORDING TO CPL. MASON, DUE TO OFFICER WALKER
and His actions STARTING THE RUMOR, WALKER can
no longer WORK A-Pod or "BE around" Plaintiff.
- ON 8-28-2024, Plaintiff was "STRIP SEARCHED" by
OFFICER WALKER AFTER BEING TOLD "THEY couldn't
be around EACH OTHER".
- 8-5-2024 - Plaintiff SPOKE WITH Lt. TARWATER about
WALKER and SEVERAL OTHER ISSUES.
- 8-10-2024 - JOHN WALKER CAME IN TO A-Pod and
SLAMMED INMATE JOSHUA D. GANN WHO WAS ALREADY
ON HIS KNEES, FACING THE WALL WITH HIS HANDS UP.
MR. GANN WAS HAVING a MENTAL EPISODE.
- RUMOR CAUSED Plaintiff TO FEAR FOR HIS SAFETY & RETALITORY
CONSEQUENCES.
- A PRISON GUARD WHO labels AN INMATE a "SNITCH" VIOLATES
THE duty TO PROTECT AN INMATE FROM RETALIATION OR
ATTACK, REGARDLESS OF WHETHER THE INMATE is SUBSEQUENTLY
ATTACKED, because "AN INMATE WHO is CONSIDERED a SNITCH
is in danger of being ASSAULTED OR Killed by OTHER
INMATES." REEVES V. King 774 F.3d 430, 433 (8TH Cir. 2014)
- IT WAS BROUGHT TO Plaintiff ATTENTION by CPL MASON
THAT OFFICER WALKER TOLD INMATES in E-pod THAT Plain-
TIFF WAS "A SNITCH" ON 8-1-2024 & 8-2-2024 during
MED Call and ON HIS MIDNITE, A-pod WALK THROUGH. CPL
MASON INFORMED Plaintiff WHAT WALKER Had Said and
MASON also TOLD Plaintiff THAT HE Could no longer
Go back TO E-Pod And THAT WALKER Could No

FACTS SHEET CONTINUED:                                      P.#3

longer work A-Pod or be around Plaintiff because
of this. This conversation took place in medical at P.M.
Med Call and was witnessed by Nurse Granetta.
• Plaintiff still has to eat meals that are prepaired
by former E-Pod inmates.
• Seen them are protecting officer Walker whom
started the rumor more than the Plaintiff whom is
the victim of it.
• Plaintiff was confronted by an E-Pod inmate at
Court on 8-5-2024 and told him that "it wouldn't
be good if he came back". - Walker brought these
inmates in the Court Room.
• Plaintiff himself has heard Walker talk about
inmates personal health information and health cond-
itions & make fun of them for having H.I.V. & Herpes.
• Plaintiff has also witness Walker falsly label inmates
he don't like or get along with "Snitches" or "Cho-moes"
• On 8-4-2024, Plaintiff requested his grievance
on officer Walker to be "Escalated" to the Sheriff.
411-4-140 standards Prescribed by the TN Corr. Inst.
(a)(5) - Jail officials have a duty to "Ensure the
welfare of all persons committed to the institution.
• officer Walker started the rumor for the express purpose
of identifying Plaintiff as a snitch knowing it would
put him at risk of being assaulted by other inmates.
This is sufficient to establish the subjective element
on 8th Amn. Violations. Plaintiff v. See Morris 2021 WL 2149497 at #4

Facts continued                                    p.#4

• In the excessive force context standards always
are violated when prison officials maliciously and
sadistically use force to cause harm, see WHITLEY,
475 U.S. at 327, 106 S.Ct. at 1088, whether or not
significant injury is evident. Moreover, although
the amendment does not reach de minimis uses of
physical force, provided that such use is not of a sort
repugnant to the conscience of mankind, ibid,
the blows directed at the plaintiff are not de
minimis, and the extent of him having to fear
for his life, safety, health and well being expressly
through the (hands) actions of officer Walker,
an official that has a duty to protect him from
such, is a clear violation of the constitution.
Combined that with: NO MENTAL HEALTH CARE, FIRE
ALARMS & SIRENS in the A.M. hours, threats from other
officials, repercussion's for exercising 1st Amn right
to file a grievance, enduring being moved and re-
housed for such, late medication times, improper
medication administering upon receiving a dose,
"floating suboxone" mixing it with water after
crushing it, which is completely the wrong way
to take a "sublingual" medication. All of this
non-sense combined with all of the other
aforementioned issues in the complaint ~~compromise~~
undoubtedly make a strong showing of
numerous constitutional violations and misconduct

Facts Continued                                                    p#5

in which they should all be held accountable.
     Officials ignoring the concepts of dignity,
civilized standards, humanity, and decency that
animate the 8th Amm. SEE Estelle, Supra '429
U.S. at 102, 97 S.Ct. at 290 p.10-11; evinced
such wantonness with respect to the un-
justified infliction of harm as is tantamount to
a knowing willingness that it occur; Whitley,
475 U.S., at 311, 106 S.Ct. at 1085.
• Violence is a forseeable result of the tape and
topic of Walkers rumor when considering the environment.
• Officer Walkers action's/rumor placed Plaintiff in
serious jeaprody of assault by other inmates.
• The facts support Rule 433(B)(3) because Walker
was infact the perpetrator of the rumor. Tort law
principals may appropriately be applied in 1983 cases
see Memphis Community School District v. Stachura, 477
U.S. 299, 305-07, 106 S.Ct. 2537, 2541-43, 91
L.Ed.2d 249 (1986) see also Carey, 435 U.S. at
260, 98 S.Ct. at 1050-51.
• This Rule also applies to Reckless and intentional
acts. See Restatement (Second) of Torts 5d and
870, comment I applies only in cases of Alternative
liability 433 B of the Restatement (Second) of Torts
(1965 and 1979)