UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PATRICK RYAN SMITH,                )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )   No.:  1:24-CV-311-KAC-CHS
                                   )
JOHN WALKER, *et al.*,             )
                                   )
        Defendants.                )

## MEMORANDUM AND ORDER

Plaintiff, a pretrial detainee proceeding pro se and *in forma pauperis* in a civil rights action under 42 U.S.C. § 1983, filed a Complaint that is before the Court for screening in compliance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(e) and § 1915A. For the reasons set forth below, the Court **DISMISSES** the Complaint.

I.   PLRA SCREENING

    A.   Screening Standard

Under the PLRA, a district court must screen the Complaint[1] and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under

---

[1] To the extent that Plaintiff wished to amend his Complaint in his "Pro Se Notice Change of Address" [Doc. 8] to add any additional claim, it is not proper to do so. Plaintiff has not requested leave to amend his complaint. *See* Fed. R. Civ. P. 15. And the Court previously warned that it would "automatically deny any requests to amend or supplement the Complaint" filed "before the Court has completed" the PLRA screening [Doc. 7 at 2]. And Plaintiff has not shown good cause to undermine the Court's prior order. *See* Fed. R. Civ. P. 41(b) (generally requiring parties to comply with court orders). Accordingly, the Court denies any intended motion to amend.

[28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Supreme Court has instructed that a district court should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

B. **Plaintiff's Allegations**

Plaintiff is a pretrial detainee housed at the Sevier County Jail [*See generally* Doc. 2]. On April 20, 2024, Officer John Walker, along with Officer Green, Corporal Monday, and Sergeant Victoria, conducted a shake down of E-pod [*Id.* at 24]. E-pod is Officer Walker's "Aryan Privilege" pod, which requires inmates housed there to be both "white" and "local" (with limited exceptions "if one is affiliated") [*Id.* at 18]. After the shakedown, the officers exited the unit and locked the door [*Id.* at 24]. Inmate Harley Floyd threw an empty cup at the door [*Id.*]. Officer Walker immediately opened the door and shot Inmate Floyd twelve to fifteen times with a high-powered pepper ball/gas rifle [*Id.*]. Multiple inmates were hit, and toxic gas was released into the air [*Id.*]. It caused inmates to choke and cough [*Id.*]. Because Plaintiff has asthma, he was rushed for medical treatment per Sergeant Victoria's orders, where he was given a breathing treatment before being taken back to E-pod [*Id.* at 24-25].

On May 13, 2024, after "sending Plaintiff multiple disrespectful and unprofessional responses to his medical inquiries[,]" H.S.A.[2] Lynn Blix, then[3] a nurse for Quality Correctional Health Care ("QCHC"), "deliberately and intentionally 'hiked' [Plaintiff's] medical balance to $30 extra" [*Id.* at 15].

---

[2] Plaintiff does not identify this abbreviation, but the Court presumes without deciding that it stands for "Health Services Administrator."

[3] Plaintiff states that Defendant Blix was later fired for unknown reasons [Doc. 2 at 4].

On June 7, 2024, Plaintiff filed a grievance requesting to split his medication into two doses—one in the morning and one in the evening [*Id.* at 10]. He filed the grievance because he periodically does not receive his medication until 11:00 p.m., "which is unreasonable" [*Id.* at 11]. Early the next morning, he was awakened by Officer Bo and Nurse Blix [*Id.* at 10]. Nurse Blix stated that she was "sick and f*****g tired of [Plaintiff] filing these g*dd**n grievances" citing "fake law" [*Id.*]. She told Plaintiff, "Did you know there's a law that says we don't have to treat you at all[?] [I]t's called 'Our Law'" [*Id.*]. She also informed Plaintiff that she had already spoken to their attorney and the doctor, who both "agreed to take [Plaintiff] off [his] Suboxone" [*Id.*].

On June 28, 2024, Plaintiff wrote a grievance because he had allegedly not received mental health treatment in over four months [*Id.* at 11]. But two days before, Nurse Practitioner ("NP") Patrick McCormick had another nurse give Plaintiff the medication "Celexa" without informing him it would make him sick and "had a high number of side effects" [*Id.*]. About two hours after taking the Celexa, Plaintiff was so nauseated that he could not get out of bed [*Id.*].

Nurse Blix told Sergeant Victoria that Plaintiff was psychotic and needed to be moved to observation [*Id.* at 12][4]. Even though the order for the move purportedly came from Doctor Bates, Nurse Blix "pushed the issue" because Plaintiff filed a grievance [*Id.*]. Plaintiff believes this because, if the move had occurred for a legitimate reason, Nurse Blix would have had him moved the day Nurse Williams "made a report about [his] reaction and discontinued the Celexa" [*Id.*]. Instead, Plaintiff was allegedly "re-housed" in retaliation for filing a grievance [*Id.* at 17].

Sometime after July 10, 2024, Plaintiff filed a grievance after receiving his medications five to six hours later than normal on several different occasions [*Id.* at 12]. On July 11 and 19, 2024, Nurse Angie "flagged" Plaintiff for allegedly hoarding his Suboxone [*Id.* at 12-13]. Plaintiff

---

[4] It appears that Plaintiff inadvertently omitted a page of his Complaint, as his handwritten notation of page numbers jumps from "P.#2" to "P.#4" [*Id.* at 11-12], and this particular allegation begins mid-sentence on page 12 [*Id.* at 12].

3

was called to the medical unit by Nurse Williams on July 20, 2024, to tell him he had been "flagged" [*Id.* at 13].  This was the first Plaintiff had "heard anything about it" [*Id.*].  Plaintiff believes he was taken off his Suboxone because of his pending lawsuit against the Sheriff and QCHC regarding his medical care [*Id.*; *see also id.* at 2, 4, referencing No. 3:24-CV-169-KAC-JEM (E.D. Tenn.) (filed April 12, 2024)].

On or about July 27, 2024, Plaintiff was moved from E-pod to A-pod, a medical pod, after Corporal Mason advised Plaintiff during evening medicine call that he and two other inmates would be rehoused [*Id.* at 20, 22].  On or about August 1, 2024, Corporal Mason told Plaintiff that Officer Walker started a rumor in E-pod that Plaintiff was a snitch [*Id.* at 22].  Around that same time, Plaintiff spoke with Corporal Mason twice in A-pod, and during one of those conversations, Corporal Mason informed Plaintiff that Officer Walker had been fired for misconduct and then re-hired by the Sheriff's Department [*Id.* at 21, 22].  Rehiring Officer Walker purportedly violates Tennessee law requiring correctional officers to have "good moral character as determined by investigation" [*Id.* at 22–23, citing Tenn. Code Ann. § 41-1-116].

On August 5, 2024, Plaintiff was taken to court with several inmates from E-pod [*Id.* at 18].  Plaintiff was "forced to stay in A-pod" because of the rumor Officer Walker started about Plaintiff being a snitch [*Id.* at 20].  Per Corporal Mason, Plaintiff and Officer Walker are not permitted to be around one another due to the rumor [*Id.* at 18].  But no measures were taken to guarantee Plaintiff's safety [*Id.*].  Plaintiff worries and suffers mental and emotional anguish due to the fear he feels from Officer Walker's actions [*Id.* at 19].

On August 28, 2024, Officer Walker strip-searched Plaintiff, even though he was not supposed to be around Plaintiff [*Id.* at 18-19].  Officer Walker singled Plaintiff out for mistreatment "to encourage the result of violence" [*Id.* at 20].

4

At some undesignated time, Plaintiff helped Inmate Harley Floyd prepare a Section 1983 complaint against Officer Walker for excessive use of force [*Id.* at 25]. Officer Walker found out about Plaintiff's assistance to Inmate Floyd and developed a vendetta against Plaintiff [*Id.*]. Officer Walker made comments to Plaintiff, such as calling him a "'paper pusher,' which is a slick term for snitch" [*Id.* at 25]. He has also walked by Plaintiff's bunk and made comments about how much paperwork Plaintiff has accumulated from his multiple cases [*Id.*]. This is an attempt by Officer Walker "to paint a bigger picture in the minds of lesser educated inmates in hopes to manipulate them and turn them against the Plaintiff and make them 'suspicious' of him" [*Id.*].

Plaintiff believes that after he was moved, Officer Walker saw an opportunity to start another rumor about Plaintiff to keep him from coming back to E-pod, because Officer Walker saw Plaintiff as a threat that could "potentially expose his misconduct" [*Id.*]. Corporal Mason told Plaintiff that Officer Walker has "done this a time or two" and knows when to turn his body camera off "to avoid being caught" [*Id.* at 25-26]. This tampering with evidence and placing an inmate in danger purportedly violates Tennessee law [*Id.* at 26, citing Tenn. Code Ann. § 39-16-503, § 41-4-140, § 41-4-118]. Officer Walker has also told inmates that Plaintiff's lawsuits and grievances were causing shakedowns and preventing inmates from getting outdoor recreation time [*Id.* at 30]. Plaintiff still must eat meals that are prepared by former E-pod inmates [*Id.* at 32].

Plaintiff, who is mentally ill and untreated, has been forced to endure "many other constitutional violations[,]" such as "onerous fire alarms, lights strob[]ing, and sirens blaring in the early a.m. hours" of both A-pod and E-pod [*Id.* at 27]. His evening medication was also so routinely late that he decided to file a grievance, which prompted "vindictive repercussions[,]" such as getting "flagged" by Nurse Angie [*Id.* at 27-28]. Other constitutional violations Plaintiff has endured include: (1) cameras in the bathrooms; (2) a speaker in the attorney's booth; (3) being denied the ability to file a police report when his home was burglarized; (4) not being permitted to

5

participate in religious services for months; (5) being charged $2.00 for a roll of tissue; (6) "no mental health care – (pending screening)"; (7) no access to certified mail slips or any type of indigence assistance for legal mail, as the jail only provides stamped envelopes; (8) "poisonous 'hammer-head' worm invasion in the shower in A-pod"; (9) a worm in his green beans on August 29, 2024; (10) Nurse Blix's multiple threats that she would take him off his medications for filing grievances; (11) being charged for using his asthma inhaler outside of medicine call; (12) being forced to use un-sanitized community nail clippers in medical dorm with inmates that have H.I.V. and Hepatitis C; (13) receiving legal mail months late; (14) an administrative remedy system that is frequently unavailable; (15) officials' refusal to tell you their name if you ask [*Id.* at 28-29]; and (16) being forced to take his medication improperly [*Id.* at 33].

Thereafter, Plaintiff filed this Complaint on September 13, 2024, against E-pod Officer John Walker in his official capacity, [*id.* at 1, 3]; H.S.A. Nurse Lynn Blix, in her official capacity, [*id.* at 1]; and Major Rhett Rutledge in an unspecified capacity, [*id.* at 3]. He requests an award of monetary damages, costs, and fees [*Id.* at 3, 5].

### C. Analysis

To state a claim under 42 U.S.C. § 1983, Plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *See* 42 U.S.C. § 1983.

#### 1. Claims Against Defendants Walker and Blix

Plaintiff sued Defendants Walker and Blix solely in their official capacities for monetary damages [*Id.* at 1]. Suit against these Defendants in their official capacities essentially seeks to sue their respective employers. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

This is because in a suit against an officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993).

Defendant Walker is employed by Sevier County. But Sevier County cannot be liable based solely on the actions of an employee. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (liability under Section 1983 may not be imposed merely because a defendant "employs a tortfeasor"); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors."). And Plaintiff has not set forth any facts that even tend to show that a custom or policy of Sevier County caused any of the actions that support his claims. *See Monell*, 436 U.S. at 691 (1978) (holding that a municipality may be liable under Section 1983 where its official custom or policy causes a constitutional rights violation).

At the time relevant to this litigation, Defendant Blix was employed by QCHC, the contracted medical provider for the Sevier County Jail. Plaintiff's claims against Defendant Blix in her official capacity are also assessed with municipal-liability standards. *See Thomas v. Coble*, 55 F. App'x 748, 448-49 (6th Cir. 2003); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1994). And the Complaint contains no allegations that would permit the Court to infer that QCHC is liable for Defendant Blix's actions as alleged in the Complaint. Accordingly, the Court **DISMISSES** Plaintiff's claims against Defendants Walker and Blix.

2. **Claims Against Defendant Rutledge**

Plaintiff does not identify the capacity in which he sues Defendant Rhett Rutledge. But for Plaintiff's benefit, the Court presumes that he wishes to raise official-capacity and individual-capacity claims.

As for any official capacity claims, Defendant Rutledge appears to be an employee of Sevier County. And the Complaint includes no facts that would establish liability for Sevier County arising out of any actions by Defendant Rutledge [*See* Doc. 2]. In fact, the Complaint includes no salient facts against Defendant Rutledge [*See id.*].

Moving to any individual capacity claims, to state a claim against Defendant Rutledge Plaintiff must adequately plead that Defendant Rutledge's actions violated the Constitution. *See Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). But Plaintiff's Complaint contains no factual allegations against Defendant Rutledge [*See* Doc. 2]. Therefore, Plaintiff has not set forth any facts from which the Court could plausibly infer that Defendant Rutledge was personally responsible for any of the constitutional violations alleged. And the Complaint fails to state a claim against him. Accordingly, the Court will **DISMISS** all claims against Defendant Rutledge.

### 3. Potentially Duplicative Claims

Prior to filing the instant Complaint, Plaintiff filed a separate complaint against NP Patrick McFarlin, Sheriff Hodges, and QCHC asserting claims relating to how Plaintiff's Suboxone is administered, the absence of mental health care, an effectively unavailable administrative remedy process, his access to mailing slips, the denial of religious services/diet, being charged for toilet paper, and his inability to file a police report. *See Smith v. McFarlin*, No. 3:24-CV-169-KAC-JEM (E.D. Tenn.) (filed April 12, 2024). Plaintiff repeats those allegations in the instant case [*Compare* Doc. 1 in No. 3:24-CV-169 *with* Doc. 2 in No. 1:24-CV-311]. However, federal courts endeavor to avoid "duplicative litigation." *Smith v. S.E.C.,* 129 F.3d 356, 361 (6th Cir. 1997) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)).

Therefore, to the extent Plaintiff intends to raise those duplicative claims again here, the **DISMISSES** these claims from the instant action because they are duplicative of another pending action. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("Federal courts . . . retain broad powers to prevent duplicative or unnecessary litigation.").

## II. CONCLUSION

For the reasons set forth above, the Court **DISMISSES** Plaintiff's Complaint. Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24. Should Plaintiff file a notice of appeal, he is **DENIED** leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24. An appropriate Judgment Order **SHALL** enter.

**SO ORDERED**.

**ENTER:**

/s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge